**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000366
05-JUN-2026
08:07 AM
Dkt. 78 SO**

NO. CAAP-24-0000366

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


U.S. BANK NATIONAL ASSOCIATION, A NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-RM1, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-RM1, Plaintiff-Appellee,
v.
DIONISIO P. PASION; DIONISIO PALACIO PASION, TRUSTEE OF THE DIONISIO AND ANGELITA PASION TRUST, AN UNRECORDED REVOCABLE TRUST DATED AUGUST 9, 2006; ANGELITA M. PASION; ANGELITA MIGUEL PASION, TRUSTEE OF THE DIONISIO AND ANGELITA PASION TRUST, AN UNRECORDED REVOCABLE TRUST DATED AUGUST 9, 2006, Defendants-Appellants; UNITED STATES OF AMERICA, Defendant-Appellee,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50; DOE CORPORATIONS 1-50; DOE ENTITIES 1-50; and DOE GOVERNMENTAL UNITS 1-50, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC121003044)

**SUMMARY DISPOSITION ORDER**
(By: Nakasone, Chief Judge, Wadsworth and Guidry, JJ.)

This is a judicial foreclosure case. Self-represented Defendants-Appellants Dionisio P. Pasion and Angelita M. Pasion (the **Pasions**), Dionisio Palacio Pasion, Trustee of the Dionisio and Angelita Pasion Trust, an Unrecorded Revocable Trust Dated

August 9, 2006, and Angelita Miguel Pasion, Trustee of the Dionisio and Angelita Pasion Trust, an Unrecorded Revocable Trust Dated August 9, 2006 (collectively, the **Appellants**),[1] appeal from the Circuit Court of the First Circuit's (**circuit court**)[2]: (1) April 5, 2024 "Findings of Fact; Conclusions of Law; Order Granting [Plaintiff-Appellee U.S. Bank National Association, a National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-RM1, Asset Backed Pass-Through Certificates, Series 2006-RM1's (**U.S. Bank**)] Motion for Summary Judgment, and for Interlocutory Decree of Foreclosure Against All Parties, Filed December 7, 2022" (**Foreclosure Order**); and (2) April 5, 2024 Judgment.

The summary judgment record reflects that Appellants owned real estate in Honolulu (the **Property**). In May 2006, the Pasions executed a $500,000 promissory note (**Note**) in favor of ResMAE Mortgage Corporation. The Note was secured with a mortgage on the Property (the **Mortgage**), and endorsed in blank. U.S. Bank subsequently acquired the Note.

The Pasions defaulted on the Note in February 2011, failed to timely cure the default, and U.S. Bank filed a Complaint for Foreclosure (the **Complaint**) on December 4, 2012.

---

[1] Appellants were represented by counsel below, and are self-represented on appeal.

[2] The Honorable Kevin T. Morikone presided.

U.S. Bank filed its operative third Motion for Summary Judgment on December 7, 2022. The circuit court granted U.S. Bank's Motion for Summary Judgment, and entered Judgment.

On appeal, Appellants raise three points of error, contending that the circuit court erred in granting summary judgment in favor of U.S. Bank because U.S. Bank: (1) "lacked standing to foreclose"; (2) "failed to submit a clear, readable and reliable loan general ledger" such that "genuine issues of material fact remain[] unresolved as to whether payment of the subject mortgage loan was in default when suit was first filed on December 4, 2012"; and (3) "failed to submit admissible default notices mailed to each of the Pasions."

We review the circuit court's grant of summary judgment de novo, applying the following standard,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Ralston v. Yim, 129 Hawaiʻi 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (citation omitted).

Upon careful review of the record and relevant legal authorities, and having given due consideration to the arguments

advanced and the issues raised by the parties, we resolve Appellants' contentions as follows.[3]

(1) U.S. Bank, as the foreclosing party, "must [inter alia] prove its entitlement to enforce the note and mortgage." Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 367, 390 P.3d 1248, 1254 (2017) (cleaned up). In Reyes-Toledo, the Hawaiʻi Supreme Court held that,

> A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as standing is concerned with whether the parties have the right to bring suit. Typically, a plaintiff does not have standing to invoke the jurisdiction of the court unless the plaintiff has suffered an injury in fact. A mortgage is a conveyance of an interest in real property that is given as security for the payment of the note. A foreclosure action is a legal proceeding to gain title or force a sale of the property for satisfaction of a note that is in default and secured by a lien on the subject property. Thus, the underlying "injury in fact" to a foreclosing plaintiff is the mortgagee's failure to satisfy its obligation to pay the debt obligation to the note holder. Accordingly, in establishing standing, a foreclosing plaintiff must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action.

Id. at 367-68, 390 P.3d at 1254-55 (cleaned up).

Here, the summary judgment record reflects that U.S. Bank provided the circuit court with the following: (1) the May 1, 2023 Affidavit of Note Possession, in which Sherry Stafford (**Stafford**), in her capacity as Vice President of JPMorgan Chase Custody Services, Inc. (**JPMCCSI**) and JPMorgan Chase Bank, N.A. (**Chase**), represented under oath that,

> 1. . . . I have access to and am familiar with the business records and record keeping system of Chase and

---

[3] We reorder Appellants' points of error herein.

[JPMCCSI,] a subsidiary of Chase, concerning the loan. Chase was the servicing agent for [U.S. Bank]. I make this affidavit based upon my review of those records and from my knowledge of how they are kept and maintained. These records are maintained by Chase and JPMCCSI in the course of each of their regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is Chase's and JPMCCSI's regular practice to keep such records in the ordinary course of its regularly conducted business activity.

2. Chase's regular business practice is to store notes secured by mortgages and deeds of trust in collateral files maintained by Chase's agent, JPMCCSI, in a secure vault facility in Monroe, Louisiana.

3. [The Pasions] executed [the Note] dated 5/9/2006 in the original principal amount of $500,000.00, with an original interest rate of 6.650% per annum, for the [Property]. The Note is secured by [the Mortgage] dated 5/9/2006. Attached hereto as Attachments 1 and 2 are true and correct copies of the original Note and recorded Mortgage, respectively.

4. According to the document activity on the Chase Collateral Report, **Chase had possession of the original Note, including the affixed endorsement at the time of filing the Complaint on December 4, 2012**. Attached hereto as Attachment 3 is a true and correct copy of Chase's Collateral Report, which supports the Note, including the affixed endorsement possession at the time of the filing of the Complaint.

5. Chase's Collateral Report tracks each instance the collateral file, including the original Note with the affixed endorsement, is released or returned to JPMCCSI. It is part of Chase's responsibility to keep track of the collateral file.

6. Chase's Collateral Report reflects **Chase maintained possession of the Note, including the affixed endorsement, at its storage facility located [in Monroe, Louisiana], from January 12, 2012 until June 4, 2013,** when on that date it forwarded the original Note, including the affixed endorsement, to Bank of New York Mellon [(**BONYM**)] located [in Dallas, Texas]. The original Note, including the affixed endorsement, was returned to Chase on August 29, 2013. Chase maintained possession of the Note, including the affixed endorsement, at its storage facility, located [in Monroe, Louisiana], from August 29, 2013 until September 3, 2013, when on that date it forwarded the original Note, including the affixed endorsement, to [BONYM] located [in Dallas, Texas]. On April 18, 2022, the Chase collateral tracking system was updated to

reflect the collateral file released to [BONYM] as a result of a servicing transfer.

7.  Therefore, because there is no other record that the Note, including the affixed endorsement, moved between 1/12/2012 through 6/4/2013, I can conclude that **the original Note, including the affixed endorsement, remained in Chase's possession on December 4, 2012, at the time of filing [U.S. Bank's] Complaint.**

(emphasis added); (2) the Chase Collateral Report, authenticated by Stafford; (3) the Note and Mortgage, authenticated by Stafford; and (4) the "Assignment of Mortgage" to U.S. Bank, authenticated by Select Portfolio Servicing, Inc. (**SPS**)[4] Document Control Officer Cynthia May (**May**).

On this record, we conclude that U.S. Bank satisfied its initial burden on summary judgment.  See U.S. Bank Tr., N.A. v. Verhagen, 149 Hawaiʻi 315, 328, 489 P.3d 419, 432 (2021) ("Collectively, the evidence presented by U.S. Bank . . . establishes the bank's possession of the Note on the day the complaint was filed." (footnote omitted)).

The burden then shifted to Appellants, and Appellants did not meet their burden of establishing that there is a genuine question of material fact for trial.  See id. ("[A] defendant may counter this inference of possession at the time of filing with evidence setting forth 'specific facts showing that there is a genuine issue' as to whether the plaintiff

---

[4]     SPS is U.S. Bank's current loan servicer, and took over servicing of the Pasions' loan from the prior servicer, Chase, after the Complaint was filed.

actually possessed the subject note at the time it filed suit." (quoting Hawaiʻi Rules of Civil Procedure Rule 56(e))). Appellants have offered no evidence that U.S. Bank, through its prior loan servicer Chase, did not possess the Note at the time the Complaint was filed.

(2) Appellants contend that there exists a genuine issue of material fact as to whether U.S. Bank served the Pasions with the default notice prior to commencement of the underlying foreclosure action.  Appellants' contention lacks merit.

U.S. Bank established, through May's July 20, 2022 "Declaration of [U.S. Bank] in Support of Motion," that Chase mailed the "Acceleration Warning (Notice of Intent to Foreclose)" letters, dated April 2, 2011, to the Pasions via first class mail.[5]  Appellants have not produced evidence to rebut this evidence.

---

[5]     May represented in her declaration that she is "familiar with the practices and procedures of SPS" and with "the systems of record that SPS uses to create and record information related to residential mortgage loans that it services, including the process by which information is entered into those systems and how those records are maintained."  She further represented that,

> 5. **To the extent that the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were incorporated and boarded into SPS's systems, such that the prior servicer's records concerning the loan are now part of SPS's business records.**  SPS conducts quality control and verification of the information received from the prior servicer as part of the boarding process to ensure the accuracy of the boarded records.  It is the regular practice of SPS to incorporate
> (continued . . .)

(3) We decline to address Appellants' remaining contentions and arguments because they are waived. Appellants contend, for the first time on appeal, that U.S. Bank "failed to submit a clear, readable and reliable loan general ledger," and, therefore, "genuine issues of material fact remain[] unresolved as to whether payment of the subject mortgage loan was in default when suit was first filed on December 4, 2012." The record reflects that Appellants did not make this argument in the underlying proceeding, nor did they dispute that they were in default of the Note. See Ass'n of Apartment Owners of Wailea

---

5(. . . continued)
prior servicers' records into SPS's business records, and SPS routinely relies upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are incorporated and relied upon by SPS as part of SPS's business records. As part of its boarding process, meetings are established with prior servicer's key personnel and systems, method of delivery of the records, and the timing of the delivery of the records are identified. Further, SPS employs a proprietary system to board the prior servicer records. This system validates the prior servicer records using over 600 logical and financial checks. In the event that any prior servicer records are identified as being illogical or incorrect, SPS will work with the prior servicer and review loan documentation to resolve the record.

6. Based upon my experience in the mortgage servicing industry, I know that the prior servicer(s) on this loan ("Prior Servicers") followed an industry-wide standard in keeping and maintaining business records related to mortgage loans.

7. **This loan was serviced by another entity. SPS currently services the loan as attorney-in-fact for [U.S. Bank]. SPS acquired the servicing rights for this loan from [Chase][.] The business records from the prior servicer(s) have been verified and incorporated into SPS's business records.**

(Emphasis added.)

Elua v. Wailea Resort Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal" (citations omitted)).

Moreover, to the extent Appellants contend that this case should be dismissed pursuant to the doctrine of "estoppel by laches," this argument is also raised for the first time on appeal and therefore waived. See id.

For the foregoing reasons, we affirm the circuit court's Foreclosure Order and Judgment.

DATED: Honolulu, Hawai'i, June 5, 2026.

On the briefs:

Angelita M. Pasion,
Dionisio P. Pasion,
Self-represented
Defendants-Appellants.

Lisa K. Swartzfager,
for Plainitff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge